And we'll go to the last case on the calendar, N. Ray Garcia-Morales, 24-1384. All right, good morning. May it please the Court, my name is Dave Wadsworth. I am the attorney for the appellant, Robertson Cohen, who is the Chapter 7 trustee in the underlying case. A very narrow question on appeal, really what the phrase attributed to means in the Colorado exemption statute that exempts portions of tax refunds. As the lower courts have both observed, that phrase is not defined in the statute. And so the bankruptcy court really looked at three different sources for coming up with her conclusion as to why the additional child tax credit is effectively entirely exempt. She looked to the dictionary definition, she looked to a Kansas case, the Roy case, and she looked to a Supreme Court case, the Bostock case from a few years ago. Those are really the three sources that she relied on. Our position would be that none of those three really are dispositive or even really helpful on the ultimate issue before the court. The dictionary definition that she quoted says, quote, to explain that attributed, I'm sorry, attribute, the definition of attribute is, quote, to explain as caused or brought about by. That's it. It doesn't say anything about what attribute means if you've got multiple causes or independent causes. So, you know, I think it's a starting point perhaps, but it's not really, it doesn't really add much to the analysis. The Roy case, the second thing that she relied on, there are, I think, a number of problems with that one. The first is that it's a Kansas statute that is entirely different than the Colorado statute. It doesn't include the language attribute to or attributed to. That's the first problem. The second problem is that the, by its plain terms, that statute exempts the entire refund, and it's our position that because the Colorado legislature included the attributed to language, it doesn't exempt the entire refund. And then the final problem is a policy reason, and I think it's especially important because Judge Tyson, the bankruptcy court, quotes the policy when she launches into her analysis of why she concludes that the tax credit is exempt. The policy reason is the Roy court says an exempt tax refund shouldn't be burdened by tax obligations, and that's just wrong because that's, I mean, the IRS, the form itself, the IRS, the Internal Revenue Code burdens the child tax credit with the tax obligation, right? I mean, the math, the equation that you do under 26 U.S.C. 6401 and 6402 is you look at the tax obligation, the tax liability for the year, and then you reduce, or then you apply whatever components there are under the line to decide what the tax liability is, and it's agnostic. You apply tax withholding, you apply the earned income tax credit, you apply the child tax credit, but there's no question, even in this case there's no question, because the actual refund was less than the child tax credit that the credit was burdened by tax liability. So I think the premise, the idea that the tax credit shouldn't be burdened by the liability is just an incorrect statement of the law. So Roy really isn't helpful. And then we get to Bostock, and I think Bostock is a little more nuanced, but I think even that case doesn't really support the outcome. Judge Tyson cites that case, Justice Gorsuch's language in there about a but-for test, and really Judge Tyson in the bankruptcy court says that, you know, her reading of the definition of attributed to really is a but-for test. And then Justice Gorsuch says, well, the but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause. And so then what Judge Tyson does is she says, well, if I take out the exempt tax credit, then there's no refund, so it's a but-for cause. The problem with that is that it's an incomplete analysis. If you take out the wage withholding, there's also not a tax refund. There are independent, you know, causes to this refund. And so to focus only on one is to not look at the entire, you know, all of the facts, all of the circumstances. Can I probe that a little bit? Sure. So why does that help your argument? There could be multiple causes. There could be multiple but-for causes. But why would that cast doubt on the Court's interpretation that attributed does still envision a but-for relationship? I'm not sure I understand that. Well, so let me ask a different way. Maybe the question doesn't make any sense. There could be multiple but-for causes, Justice Gorsuch says, right? Right. Okay, so when the statute says attributed, okay, that's fine. There could be multiple but-for causes. But we're not talking about wage withholding. You know, we're talking about the earned tax credit or a child tax credit. And so those are either a but-for cause of the refund or they're not, even if difference in wage withholding also could have been a but-for cause of the refund. I guess I'm looking at it in the reverse way, which is that if you take out the wage withholding, there's no refund. Right. And so if that's the attribution you give, then how can you say that the tax credit is a cause of the refund? There's no refund. Yeah, but here, as Judge Bachrach is observing, there could be multiple but-for causes. But we don't have to speculate as to the value of each. It's a tax refund. It actually sets them out by line number. So it makes it very obvious, you know, how those but-for causes apply, right? Well, no, I would say that's exactly the issue. And the tax code is also agnostic on this. It doesn't say we apply the tax credit first to tax liability or we apply it to wage withholding. We just deduct, you know, en masse what's below the line, and then we come up with what the liability is. Here, because you could easily say that the refund was not caused by the credit, it just seems like it is logically inconsistent to then say it is caused by the credit. It is not necessarily a but-for cause. There are other causes that would negate the refund or the credit as being a cause of the refund. If we're looking at the words of the statute here, isn't there something to be said to say, well, in a plain reading, it's pretty simple to just do, you know, a simple addition and subtraction. And that's the way it was intended. That seems obvious. That's how it's intended, rather than what's this pro rata formula that has several contortions to it, to get to the formula through the words of the statute itself, let alone to apply the formula. So now you're proposing a rule that is going to require experts to come in later to take a look at these refunds and do this contortion exercise through a pro rata formula. How can we conclude that that is the best fair reading of the statute? So I have at least three responses to that, Your Honor. The first is the Borgman case that this court decided about 13 years ago, where the court literally, I mean, that opinion, and we block quoted in the brief, that opinion, the Tenth Circuit, outlines what the lower court had done there in deciding that the above the line, in that case it was a different kind of credit, was exempt. And what the Tenth Circuit did was it summarized the analysis. And that summary really was the but-for text. It literally was, you know, if we take this out, then there's not this and so on. So the Tenth Circuit summarizes that test, and then it says this is what the BAP did. We disagree. We disagree with that methodology. And then they go in to talk about all the components to a refund and say no one component, it's not attributed any more to one component than any other. And so, you know, I think that case stands for this idea that you do need to do a pro rata analysis. The second argument, Your Honor, would be that, and this is, I don't think, really amplified enough in the briefing, but I think it's an important argument here, and I think it also addresses a little bit Judge Tyson's marshaling comment. There's no dispute that wage withholding is not exempt. That's not exempt property of the estate. It's only what we can attribute to the credits that is exempt. And if you follow the methodology that the bankruptcy court followed, you are necessarily increasing or you're doing your own math equation where you're increasing what is exempt and reducing what is non-exempt. And the statute doesn't say that. The legislature didn't say to the exclusion of or to reduce other. I mean, you attribute the component parts. And so it just seems to me that if the legislature really wanted to reduce what was non-exempt, it would have said so. So that's argument two. Argument three would be just kind of tails on to that, which is that, I mean, the legislature chose to use the words attributed to. It didn't have to. It could have just said the child tax credit is exempt. End of story. But it didn't. It said attributed to. And if you're going to give that phrase any meaning, then it would seem to me that the pro rata approach, which Borgman, you know, implicitly or even explicitly, I guess it's not the holding of that case, so it's not necessarily precinct. Isn't Borgman distinguishable from this scenario, though, in a meaningful way about the refundability of the credit? I don't think so because that case dealt with, I mean, that's why it wasn't the holding of the case, what I'm relying on. The holding of that case was the above the line non-refundable tax credit is not exempt. That's not an issue in this case. And so I'm relying on that case for the lengthy discussion of what the attributes of a tax refund are. And I think the other argument why Borgman is compelling here or should be followed is, you know, that case was decided in 2012, 2013, and the Tenth Circuit went through this analysis of how you attribute the components of a refund. The statute that we're talking about today was amended, I think, one time post-Borgman before this case, and it's been amended a second time since this case was filed. The Colorado legislature has not taken out the attributed to language in either one of those subsequent amendments. So if the legislature didn't like, didn't agree with what the Tenth Circuit announced in Borgman, it could have amended the statute. It didn't. So that's another example of why the Borgman analysis is what is appropriate here. I think I've covered most of my points in a lot of those arguments. I would say the only other, the last point I want to make, and I will reserve a little bit of time, is that the, sorry. Oh, Judge Federico, you talked about expert witnesses and just complicated analysis. I think Judge Tyson actually, in her opinion, outlines how easy the analysis is. I think even in Borgman there might be. I mean, it's really, and we tried to do that in the final section of our opening brief is we actually, you know, we cut and pasted a picture of the tax return and said there's six components under the line that could be attributes of a refund. All you've got to do is add them up. And then, I mean, it's a very simple equation that you can come up with what the percentage, you know, if the refund is $1,000, you can easily come up with what percentage each attribute has. And then that gets you to your number. And I would say that this is the final point I wanted to make, which is that the reason the pro rata solution or the pro rata answer is the right one here is because it's the only way to apply the statute without compromising the non-exempt portion of the refund to the benefit of the exempt portion, right? If you don't do a pro rata, as I argued a few minutes ago, you're necessarily taking away what everyone agrees is non-exempt to create something that is exempt. And that's, it seems to me if the legislature wants to do that, it needs to say that. And that's also why this is distinguishable from marshalling, because marshalling you're talking about two different funds or, you know, multiple funds where something is exempt, something is non-exempt. Here you've got one fund, and you have to decide what is exempt and what isn't exempt. And the only way to do that in a way that doesn't prejudice either side is to do a pro rata. That's all I've got. I'll reserve the rest. Thank you, Your Honors. Good morning, good afternoon. May it please the Court. My name is Stephen Hyde-Swift, and I'm the attorney for the appellee in this case, Jose Garcia Morales. We ask the Court to affirm the decisions of the Bankruptcy Court and of the Federal District Court. Both these forums have ruled in favor of the appellee and agree with our position. While there's not a large amount of money at issue, $1,455, this case is important both to the trustee and to the debtor. Both the appellant in this case and his counsel are panel trustees, and their offices are paid in part by the commissions that they earn from, the monies that come into their office. The debtor uses his tax refunds as part of the process of rebuilding his financial foundation. The child tax credit is a form of public assistance, which is set aside to parents with children and to families. It's important because it assists the debtor to have funds which mitigate in part the expense of having children and the impact upon the debtor of inflation. What is the child tax credit? It's a form of public assistance, as I said, and it serves two purposes. Above the line, the nonrefundable portion is applied to what the debtor owes, and it increases the amount of the ultimate tax refund. And below the line, it reduces the debtor's – the refundable portion not only reduces what the debtor owes but potentially gives him what we had in this case, which was the debtor would have owed $345 but for the child tax credit. And so what was left over, what would have been left over without this credit would have been a tax liability rather than a tax refund. In many jurisdictions, trustees are encouraged to not administer cases under a $3,500 threshold. In Colorado, trustees are encouraged to administer even smaller states. Since 2012, the Colorado legislature has rewritten the statute in question, and we believe this was done to clarify the intent of the legislature that the funds for the child tax credit be set aside to the debtor and his family. In 2022, the General Assembly changed the language of the statute to protect even the nonrefundable portion. Judge Brimmer notes this in at least two footnotes in his case, footnote number 2 found on page 2 and footnote number 7 on page 17. He even asked the question, has Borgman been overruled? We believe that the court should affirm the bankruptcy court for the following reasons. First, the language is not ambiguous. Borgman says this, so going all the way back to 2012, there's a ruling that the statute itself is not ambiguous. Where a statute is not ambiguous, you give it its common, ordinary meaning. Both courts have looked to the dictionary deficit as a term attributable and a term of full amount. This is consistent with the Supreme Court's decision in U.S. v. Ron Perry enterprise. I don't want to interrupt your train of thought, but how do you respond to the appellant's argument that under Borgman that cuts against you because the refund is equally attributable, say, to the amount that is withheld in wages and the other line items? It's a good question. From our point of view, if you look at the statute itself, it doesn't suggest that probation is what is in order. I think in most cases simplicity is the friend of the debtor. It is the friend of the court. What the bankruptcy court and the district court asked was, what would be the impact without your taking into account the child tax credit? The difference is where they found that it was exempt in this case. I think the General Assembly could say that every tax refund is exempt. The question that we have in this case is, how can we get to the bottom of what the legislature truly intended? What do they mean by full amount? I think Judge Tyson addresses that in a wonderful way by saying that we're taking public assistance and we're detracting from that public assistance because we're applying part of the tax liability. I think that what the legislature intended in this case is that you deduct what was withheld in the first instance, what was taken out of my paycheck week to week, month to month. That amount was set aside to pay my taxes. This child tax credit, this public assistance is given to me to give me a step up if I have children and if I'm impacted by inflation. What these credits do is they give the debtor a pool of money at some time during the year when his tax return is filed to begin the rebuilding process. Counsel, can I ask? Both sides agree that our review of this Colorado statute is under a de novo review, but yet there's also a Colorado law that says that these exemption statutes are to be liberally construed in favor of the debtor. How do we overlay that with just a straight de novo review? Well, I think that if there's a benefit of the doubt, you give it to the debtor. I think the Colorado legislature says very specifically, and we put this in our brief, that the General Assembly is to enact laws which are to be liberally construed. And the whole purpose is to give something to the debtor with which to rebuild his finances. And that's very important. And it's very important because it gives the debtor something with which to start over, and it serves a useful purpose with respect to the state because the debtor's not drawing upon the resources of the state if he's self-sufficient. And so it serves two useful purposes. I don't want to interrupt your train of thought, but I want to go back to what you were saying earlier about Boardman and attributed. And I want to ask you, and you may not have Judge Abell's language here, but your adversary was referring to this passage. It is true that the nonrefundable portion of the child tax credit is part of the equation by which a refund, if any, is calculated, but so too are the amount of income earned, the amount of deductions claimed, the amount of credits available, and the amount of taxes already paid in withholding, among other variables. A taxpayer's refund, if any, is no more attributed to the nonrefundable portion of the child tax credit than it is to any of these other elements of the equation. So how do you respond to the appellant's argument that Judge Abell has rejected what the district court did in interpreting this attributed to as being binary? I think we need to look at what the General Assembly has done since 2012. And one of the things that they have done is they have incorporated into the statute an exemption for the nonrefundable portion of the child tax credit. And so it's possible that Borgman may have been overruled. Yeah, but that didn't happen until after. That's true. So that has really no applicability to what we're arguing here. But it does give us some insight into what the legislature was intending. And that's where... But how? If they don't make that change until after this dispute has arisen, it may be illustrative of their intent when they made the amendment in 2023, but not when this dispute arose in... My experience with the General Assembly is that they're slow to see the error of their ways. And I can tell you that, you know, I personally talked to a state senator and when I told him what had happened in the Borgman case, he was astounded that it could be given that interpretation. And... Now, they may read your argument here, so be careful. You know, it's... I've just... Go ahead. Sorry, but to continue, I don't think we can't, you know, avoid taking note of the language that's been employed. The statute specifically exempts the full amount and the amount attributable to the child tax credit. And, frankly, the trustees' proposal for tracing cannot be squared or read consistently with the term full amount. You know, I think one of the things that we have to do is read this out, the statute consistent with itself. And the logical conclusion is that the trustees' methodology significantly eats away a portion of the child tax credit, which, as I said, is public assistance. This cannot be read consistent with the language to give the debtor the benefit of the full amount. What does full amount mean? I think it means every benefit. You know, and that's why I mentioned, I think the General Assembly could say, well, we're going to let you keep every tax credit. Well, it's certainly qualified by this prepositional clause of any federal or state income tax refund. So if the Colorado legislature had taken out the word full, would you be arguing that the meaning is any different? I doubt it. They would be entitled to 100%. Well, I don't think that language is superfluous. I think it was to give emphasis that we want you to keep every aspect of the child tax credit. Okay, and that may be, I mean, if we were to consult the legislators, but, you know, if we're just reading the language, I don't know how the word full necessarily cuts either way, because if you take it out, it does seem like it would be superfluous. Perhaps, but we then fall back on policy. And policy is important. Okay, let me play devil's advocate here. You started your argument by saying that it's unambiguous. If it's unambiguous, we just look at the words. I don't know that we look at policy or canons about liberally interpreting the exemption. So, I mean, we may say, both of you may say it's unambiguous. We may say, I think Cortez says, you know, we may say it's ambiguous, even if you're, you know, both of you disagree with that. But if you're right that it's unambiguous, we can't look at policy interest, can we? Because that's only if it's ambiguous. Or am I wrong about that? Well, I think that the legislature has given us clues as to what they mean. And I think that the most direct way of interpreting this statute is by giving it a plain, ordinary meaning and by looking at it in terms of how does this best benefit the debtor. And I think, you know, there's two policies afoot here. One is the policy to pay the trustees, you know, 25% of the money that is, the commissions that they receive that they operate their offices from, their law firms. And the other policy is the policy of benefiting the debtor and giving him something with which to fall back. And I think in the balance, we weigh, we do what we can to benefit the debtor. And I think the interpretation that we have been, we've given to this statute is superior because it's simple and it's easy to apply. And, you know, I think the both Bostock decision in court that Judge Tyson relied upon was a good analysis of how this should be decided. And I think, you know, one of the dangers that you have interpreting a statute is, you know, the trustee comes to us and he says, we get to keep the tax refund and we get to keep it because we want you to adopt this difficult or more complex analysis of how it's calculated. And so from our standpoint, one of the things that makes this decision, I think, less complicated is it's a lot less complex, it's a lot less subject to misinterpretation. It's not inclined to take away from the debtor that which the legislature intended that he have. And I realize that, you know, it is the responsibility of the court to try to interpret what that means. But from our point of view, what we think it means is give the debtor every benefit of the child tax credit. And, you know, from my point of view, the notion that the above-the-line non-refundable portion doesn't impact the tax refund is not correct. And I think that's where the legislature has taken us. And I think, you know, what they want us to do is use these funds, you know, in this responsible way. You know, I think one of the most powerful arguments that Judge Tyson made was the notion that, in its effect, the analysis, the proration scheme that the trustee has come up with, in large part it detracts from or destroys a large percentage of the public assistance. And we ask the court to not go down that road. We think it's a rabbit hole. Thank you very much. Thank you. Thank you, Your Honors. Just a couple follow-up points. You asked, Mr. Swift, as you also asked me, about the amendments post-Borgman. I think the best way to look at the amendment is it just added another component into the mix, right? I mean, it just said, in addition to the below-the-line credits, we're also going to throw in the above-the-line. That's the only change. As I said before, it didn't change the or didn't have anything to do with the attributed-to language. And then in response to your question, Mr. Swift, if you didn't ask me about the liberal construction, I just thought it was worth saying something about that. This court has ruled previously that that mandate is still limited by the words of the statute. That's the Gordon case that we cite in the brief. And, I mean, we're not arguing that you don't exempt the child tax credit. All we're arguing is that to apply the statute as written, to apply it in a way that doesn't elevate something that is exempt at the expense of something that is not exempt, which the legislature doesn't say we're supposed to be doing, the pro-rata approach makes the most sense. You're still getting your pro-rata share of the child tax credit as an exemption. So, I mean, I think we're still construing the statute in a way that provides the benefits that it was intended to confer. And I agree with Judge Bacharach about the policy. I mean, everyone's argued this is unambiguous. We're not looking to the policy considerations. But I would say the facts of this case, you look at the facts of this case, Mr. Garcia Morales made $100,000 the year that he had this tax refund. He wasn't destitute, as the amicus argued and Mr. Swift argued. I mean, this guy is solidly middle class. So this is not necessarily the case where you're talking about somebody who will be left penniless if he has to turn over another $400 of this refund to pay his creditors. Thank you. Any other questions? All right. Thank you very much. It was very well presented by both sides. We appreciate your excellent advocacy. Court is in recess until 9 o'clock tomorrow morning.